UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
BRIAN TRUSHELEV, *et al.*,

                    Plaintiffs,                      18 CV 3239 (SJ) (JO) (RL)

      v.

                                           MEMORANDUM
                                           AND ORDER

THE CITY OF NEW YORK, *et al.*,

                    Defendants.

--------------------------------------------------X
APPEARANCES

ALAN J. BENNETT, PLLC
2357 Coney Island Avenue
Brooklyn, NY 11223
212-696-2116
By:    Alan Jay Bennet
*Attorney for Plaintiffs*

NEW YORK CITY LAW DEPARTMENT
CORPORATION COUNSEL
100 Church Street, 3-173b
New York, NY 10007
(212) 356-2572
By:    Geoffrey M. Stannard
*Attorney for Defendant*

**JOHNSON, Senior District Judge:**

        Plaintiffs Brian Trushelev and Pavel Poradisov ("Plaintiffs") bring this

action pursuant to 42 U.S.C. § 1983 among other federal and New York State

laws against the City of New York ("the City") and City of New York Police

Officer Robert Ramirez (collectively "Defendants"). Plaintiffs allege federal claims of (1) false arrest; (2) false imprisonment; (3) excessive force; (4) malicious prosecution; and (5) municipal liability claims against the City for failure to properly train its officers. Defendants now move for summary judgment on all claims. Based on the following reasons, the parties' submissions, and oral argument on June 17, 2020, Defendants' motion for summary judgment is **GRANTED.**

### I.  Statement of Facts

On June 20, 2016, at approximately 2:45 a.m., a 911 caller reported individuals stripping parts from a potentially stolen car on Colon Avenue, a dead-end street in Staten Island. (Dkt. No. 44, ⁋ 1.) Minutes later, Officer Ramirez arrived at the scene to find Plaintiffs dismantling two BMW cars, and car parts in the street. (*Id*. at ⁋ 3, 6.) One of the vehicles was on the street in front of 20 Colon Avenue. (*Id*. at ⁋ 4.) Neither vehicle had a license plate. (*Id*. at ⁋ 5.)

Upon questioning, Plaintiffs informed the officers that they had recently purchased the vehicles. (*Id*. at ⁋ 8.) The key dispute in this case revolves around what documents were handed to Officer Ramirez to prove ownership and whether Ramirez examined them. Poradisov provided Ramirez with papers that were stored inside a rented Black SUV nearby. It is

2

undisputed that within these documents was one salvage title listing the owner of that vehicle as "Cham Trading." (*Id*. at ¶ 14.) It is also undisputed that there was no title whatsoever for the other vehicle. (*Id*. at ¶ 15.)

Plaintiffs allege that the documents contained two bills of sale that proved that they had recently purchased the vehicles, one in North Carolina and the other in Illinois. (*Id*. at ¶ 25, 35.) They state that they bought one vehicle in response to a Craigslist advertisement and the other from an online BMW forum. (*Id*.) Plaintiffs claim that Officer Ramirez refused to examine the documents and summarily tossed them back into the SUV before handcuffing Poradisov. (*Id*. at ¶ 36.) The police took possession of the SUV and from that point on, Plaintiffs could not access it. However, Plaintiffs were able to approach the exterior of the vehicle the following day and allegedly saw documents strewn about the interior. (*Id*. at ¶ 45.) They claim to have taken a video of the documents however no such video was ever submitted into the record. The SUV was eventually returned to the rental car company. No bills of sale were ever entered into the record, nor was any other evidence of vehicle ownership outside of Plaintiffs' testimony. Plaintiffs' purported reason for this is that the officers involved failed to properly voucher the bills of sale and they were lost when the car was returned to the rental car company.  (*Id*. at ¶ 54.)

Defendants argue that the bills of sale were never provided to Officer Ramirez. (Dkt. No. 47, ⁋ 35.) They further argue that Ramirez did examine the documents handed to him and the only document pertaining to ownership was the title listing "Cham Trading" as the owner of one vehicle. (*Id.* at ⁋ 36.) To support this assertion, they point to Trushelev's testimony stating that, "Officer Ramirez was with [Poradisov] flipping through the paperwork, going through it and everything." Trushelev Dep. at 245:11-17.

Plaintiffs were placed under arrest at 3:43 a.m. and held in custody for approximately 36 hours before being released. Plaintiffs were charged with Unregistered Vehicle Dismantling in violation of New York State Vehicle and Traffic Law ("VTL") § 415(a)(1); Auto Stripping in the Third Degree in violation of N.Y. C.P.L. § 165.09(2). All charges were eventually dismissed on speedy trial grounds pursuant to N.Y. C.P.L. § 180.10.

## II. Legal Standard

A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. *See Anderson*, 477 U.S. at 248. An issue of fact is considered "genuine"

4

when a reasonable finder of fact could render a verdict in favor of the non-moving party. (*Id*.)  In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party."  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citing *Anderson*, 477 U.S. at 248).  If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied.  *See Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.  (*Id*. at 247–48.)  Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor.  *Id*. at 248; *see also Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party

5

because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

## III.   Discussion

While the parties' submissions indicate several factual disputes, most border on minutiae and fall far short of the summary judgment threshold. Upon review, the only factual dispute that is arguably "genuine" or "material" is whether bills of sale existed and were included in the documentation provided to Officer Ramirez. However, based upon the record, Plaintiffs' evidence to support this claim "is so slight" that "no rational juror could find for [Plaintiffs]." *See Prudential*, 22 F.3d at 1224. Moreover, even if this claim was assumed true, it is largely immaterial to the question of probable cause—a complete defense against Plaintiffs' core claims—given undisputed facts in the record. *See Anderson*, 477 U.S. at 248.

The only evidence plaintiffs have offered into the record to support the claim that they provided Officer Ramirez with bills of sale and he refused to look at them, is their own testimony. Despite assertions by the Defendants that these documents did not exist, Plaintiffs have not offered any evidence whatsoever to corroborate their claim—no affidavits by the car sellers, no duplicate bills of sale, no screen shots of the Craigslist advertisement or online BMW forum that allegedly led to the purchase of these vehicles. Of

course, no specific evidence is required on the part of Plaintiffs, but the complete lack of evidence is telling. If after two years of litigation, ownership of the vehicles remains unclear, it is unreasonable to expect the officers involved to have determined ownership at the scene of the alleged crime.

Several other places in the record undermine the genuineness of the dispute. Most glaringly, in his deposition, Plaintiff Trushelev contradicts Plaintiffs' argument today, stating that Ramirez was standing with Poradisov "flipping through the paperwork, going through it and everything." (Dkt. No. 40, Ex. D at 245:11-17.) Additionally, Plaintiffs claim to have multiple videos on different devices showing documents strewn about the SUV. (Dkt. No. 44, ¶ 45.) Such videos could indeed corroborate the claim that the officers failed to voucher documents into evidence, yet, Plaintiffs ultimately chose to not submit the videos into evidence, casting doubt on the claim.

### A.  False Arrest and Imprisonment

The existence of probable cause is a complete defense to Plaintiffs' charges of false arrest and false imprisonment. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d. Cir. 1996). "Probable cause is established when the arresting officer has knowledge…sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."

*Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citations and quotations omitted). This Court's probable cause "inquiry is an objective one that focuses on the facts available to the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir.2006). In reviewing a false arrest claim, "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Id*. Accordingly, so long as probable cause existed for some offense, the false arrest claim must be dismissed.

It is undisputed that shortly before 3am, Officer Ramirez responded to a 911 call reporting a possible stripping of stolen cars. When he arrived, he found Plaintiffs at the end of a dead-end street, in the process of dismantling two BMW vehicles that were both without license plates. Car parts from the vehicles were visible in the street and according to Plaintiffs neither car was in working order. Plaintiffs had no title whatsoever for one vehicle and the title for the other vehicle listed not Plaintiffs but "Cham Trading" in North Carolina.

i. **Unregistered Vehicle Dismantling**

In New York State:

A vehicle dismantler is any person who is engaged in the business of acquiring motor vehicles or trailers for the purpose of dismantling the same for parts or reselling such vehicles as scrap. No person shall

> engage in the business of or operate as a vehicle dismantler unless
> there shall have been issued to him a registration in accordance with
> the provisions of this section.

V.T.L. § 415(a)(1)**.** First, it is undisputed that Plaintiffs were not registered

vehicle dismantlers at the time of their arrest. (Dkt. No. 44, ¶ 22.) Further

considering the time of night, unclear ownership of the vehicles, and missing

license plates, the circumstances could certainly "warrant a person of

reasonable caution in the belief" that Plaintiffs were engaged in Unregistered

Vehicle Dismantling. *See Singer*, 63 F.3d at 119. Whether Plaintiffs provided

Ramirez with bills of sale for the vehicles is immaterial to this charge as

"acquiring motor vehicles" is an element of the statute. *See* V.T.L. § 415(a)(1).

Plaintiffs emphasize the word "business" in the statute and argue that

"discovery clearly established that…Plaintiffs advised Ramirez that they

were in the process of building a racecar for their recreational purposes."

(Dkt. No. 45 at 8.) First, discovery only established that Plaintiffs *claim* that

they told Ramirez they were building a racecar. But, more importantly,

Ramirez was under no obligation to take this statement at face value. While

it could be true that Plaintiffs were building a racecar from legitimately

purchased vehicles at three o'clock in the morning—a claim still unproven

today—it would also be reasonable for Ramirez to doubt such a claim under

the circumstances. Given "the facts available to [him] at the time of arrest,"

9

it was reasonable for Ramirez to infer the suspicious scene he arrived at was part of a business operation as opposed to an atypical recreational hobby. *See Jaegly*, 439 F.3d at 154.

### ii. Auto Stripping in the Third Degree

A person is guilty of Auto Stripping in the Third Degree when he "removes or intentionally destroys or defaces any part of an abandoned vehicle," but doing so on permission of the owner is complete defense. NY CPL § 165.09(2). A vehicle is deemed abandoned if "left unattended . . . with no number plates affixed thereto, for more than six hours on any highway or other public place." VTL § 1224.

On the night in question, Plaintiffs were removing parts from vehicles without license plates on a public street. Considering the unclear ownership of the vehicles discussed *supra*, these facts "warrant a person of reasonable caution in the belief that" Plaintiffs were committing Auto Stripping in the Third Degree. *See Singer*, 63 F.3d at 119.

### iii. New York City Administrative Code § 16-122(f)

If any doubt remained that probable cause existed to arrest Plaintiffs, Section 16-122(f) of the New York City Administrative Code provides an unequivocal answer. That subsection provides: "It shall be unlawful for any person to dismantle, or to remove any component part of any motor vehicle

10

in any marginal or public street or any public area." NYC Admin. Code § 16-122(f).

Plaintiffs concede that they were dismantling and removing parts from a vehicle in a public street. (Dkt. No. 45, ℙ 3, 4.) However, in their defense, Plaintiffs argue that the legislature did not intend to include their actions in the scope of Section 16-122(f). (Dkt. No. 45, ℙ 12.) The code's "legislative intent" subsection reads, in part:

> The purpose of this section is to punish those persons who abandon and/or remove component parts of motor vehicles in public streets. It is not the intent to prohibit or preclude any person in lawful possession of a vehicle from making lawful repairs or removing any component part for the purpose of making such lawful repairs to a motor vehicle on a public street.

NYC Admin. Code § 16-122(a).

Even fully crediting their reason for dismantling the vehicles, Plaintiffs argument is unavailing. By their own admission, Plaintiffs' mechanical undertaking was much broader than the exception above allows. Plaintiffs claim they were *building a racecar* from two broken down vehicles. Parts were being permanently removed from the vehicles to "prepare them for the track," and not merely removed to facilitate car repairs. Trushelev Dep. at 27:19-25. A plain reading of Section 16-122(f) leaves no doubt that Plaintiffs' actions were within the scope of the statute.

11

### B.  Malicious Prosecution

"In New York, the four essential elements of a malicious prosecution claim are: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Dufort v. City of New York*, 874 F.3d 338 (2d Cir. 2017) (citing *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000)). Like a false arrest claim, the "existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). In general, "[p]robable cause to arrest is sufficient for probable cause to prosecute unless facts come to light between the arrest and arraignment that vitiate the probable cause." *Obilo v. City of New York*, 2003 WL 1809471 (E.D.N.Y. Feb. 28, 2003).

Defendants move for summary judgment on the malicious prosecution claim on the grounds that probable cause existed to prosecute and that a speedy trial dismissal does not constitute a "favorable determination." (Dkt. No. 42, 9.) Because the Court finds that there was in fact probable cause to prosecute at the time of arraignment, it need not consider the issue of favorable determination.

As discussed *supra* there was probable cause to arrest Plaintiffs for both charged offenses. Plaintiffs were arraigned on June 21, 2016 (Dkt. No. 44, ⁋ 18), one day following their arrest, and there is no indication that any evidence had come to light by that time or at a later date to obviate probable cause. Again, the dispute over the existence of bills of sale, is not material to the charge of Unregistered Vehicle Dismantling. Even if we credited Plaintiffs contention that officers failed to properly investigate and voucher those documents, it would only show that the Plaintiffs had acquired the vehicles they were dismantling—which is an element of V.T.L. § 415(a)(1)**.**

With respect to Auto Stripping, the bills of sale would have weakened probable cause for prosecution as to that claim. However, as previously discussed, Plaintiffs have failed to present adequate evidence to support their position. Rather, Plaintiffs contradicted their own position through testimony (Trushelev Dep. at 245:11-17) and undercut its veracity by making unsubstantiated claims of video evidence. (Dkt No. 44, ⁋ 45.)

### C.  Excessive Force

Plaintiffs excessive force claim also fails as a matter of law. To succeed on that claim, Plaintiffs must show that Ramirez "used more force than was necessary to subdue [Poradisov]." *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003). There is no indication that Ramirez used an inordinate amount

13

of force when handcuffing Poradisov. Rather, Plaintiffs allege that Ramirez declined a request to use two pairs of handcuffs to accommodate an old shoulder injury of Poradisov's. (*See* Poradisov Dep. at 36:22-25.) Poradisov does not allege that he sustained any injury at all as a result of the handcuffing, but only that his shoulder clicked while handcuffed. (*Id.*) In an excessive force claim predicated on tight handcuffing, lack of injury beyond temporary discomfort is generally dispositive. *See Lynch v. City of Mount Vernon,* 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) ("There is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort."); *Washpon v. Parr*, 561 F. Supp. 394, 407 (S.D.N.Y. 2008) ("*de minimis* injury can serve as conclusive evidence that *de minimis* force was used"). Plaintiffs do not appear to seriously contest this as they did not raise any counterargument in their response brief. (*See* Dkt. No. 45.)

### D. Municipal Liability

As Plaintiffs have failed to demonstrate any viable underlying constitutional violation, the court need not consider the merits of their *Monell* claim. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where

14

that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.") Accordingly, the City is entitled to summary judgment on Plaintiffs claims of municipal liability.

### E.  Remaining State Claims

Having dismissed all of Plaintiffs' federal claims, this Court "may decline to exercise supplemental jurisdiction" over the remaining state claims. 28 U.S.C. § 1367(c)(3). The exercise of supplemental jurisdiction is discretionary and not a matter of right. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n. 7.

This is the "usual case" where the *Cohill* factors "point toward declining to exercise jurisdiction over the remaining state-law claims." (*Id.*) Plaintiffs have not presented any reasons to the contrary beyond a mere

recitation of the relevant legal standard. (*See* Dkt. No. 45, 21-22.) However, there are clear reasons why this case is among the typical type that should be dismissed. There is no federal interest whatsoever in the outcome of the state claims alleged by Plaintiffs and comity considerations definitively support declining jurisdiction. Considering judicial resources, evidence in the record suggests little chance Plaintiffs could succeed on their state law claims. While exactly which state claims Plaintiffs are bringing remains vague, (*See* Dkt. No. 42, 21; Dkt. No. 45, 20; Dkt. No. 48, 9.), the same defect that undermines their federal claim for malicious prosecution (i.e. the presence of probable cause), applies to their state law claim as well. *See Frederique v. County of Nassau*, 168 F.Supp.3d. 455, 477 (E.D.N.Y. 2016) ("Claims of malicious prosecution arising under Section 1983 are governed by the same standard applied under state law") (citing *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)). While the Court is aware that the Plaintiffs may have incurred substantial legal costs to get to this point of litigation, further expenditure of judicial and party resources on this case is no remedy. However, this Court declines to go further into the merits of the remaining state law claims and they are dismissed without prejudice.

16

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiffs' claims are dismissed.

**SO ORDERED.**

Dated: August 21, 2020
Brooklyn, NY

/s/

Sterling Johnson, Jr., U.S.D.J.